In the Matter of the Estate of MARION G. FRENCH, Deceased.

Surrogate's Court, Suffolk County, August 27, 1952.

*Ingerman & Smith* for Marion B. Webster, petitioner.

*Thomas J. Brennan* for Charles H. Sullivan, respondent.

HAZLETON, S.  Petitioner, the only heir at law of deceased, instituted this proceeding under section 137 of the Surrogate's Court Act to acquire possession of the last will of deceased for purposes of probate.  Respondent is an attorney who allegedly rendered certain services on behalf of deceased in her lifetime, the remuneration for which is still due him.  Among the papers of deceased which he still retains is the original copy of her purported last will and testament.  He opposes the motion of petitioner on the ground that he has a retaining lien on the will.

The motion was argued before the Surrogate and the petition granted.  Thereafter, the court, on application of respondent, issued an order requiring the petitioner to show cause '' why an order should not be granted to the respondent allowing him

'' (a) Leave to reargue the motion for an order requiring the respondent to produce the will of MARION G. FRENCH, deceased, dated July 6, 1943; and

'' (b) Upon such reargument being allowed, granting to the respondent an order which shall provide that upon the production of the said will, the respondent shall retain constructive possession thereof pursuant to his lien for legal services rendered to the decedent during her lifetime and to her estate after her death; and

'' (c) The fixation by the court of the amount of such lien; and

'' (d) Preference of such lien above any and all debts of the said MARION G. FRENCH, other than funeral and administration expenses * * *.''

Reargument was granted so that the entire controversy is now being considered *de novo.*  '' As is evidenced by the provisions of section 137 of the Surrogate's Court Act, which is a substantial continuation of section 2607 of the Code of Civil Procedure, it is the policy of the law that all purported testamentary instruments of a decedent shall be filed in the appropriate Surrogate's Court whenever any interested person intimates a wish to this effect.''  (*Matter of Kennedy,* 164 Misc. 796, 797.)  This policy is the natural consequence of the fact that '' In order that a will may be established in the Surrogate's Court it is usually required, under section 150 of the Surrogate's Court Act, that the will ' must be filed and remain in the surrogate's office.'  This section is a substantial continuation of section 2620 of the Code of Civil Procedure, which has been interpreted to imply that except in the limited instances in which this requirement is expressly relaxed by statute, a will cannot ' be admitted to probate by the surrogate without the

production of the will itself.' (*Matter of Law*, 80 App. Div. 73, 75; *Matter of Cameron*, 47 id. 120, 125; affd., on opinion below, 166 N. Y. 610.) In the usual case in which the will cannot be produced and in certain others contemplated by the express terms of the statute, ' an action to establish the will ' must be instituted * * * [Cases cited] ''. (*Matter of Canfield*, 165 Misc. 66, 68.) It is clear that the situation here is not one of those contemplated by section 200 of the Decedent Estate Law (when action to establish a will may be brought).

Section 137 of the Surrogate's Court Act '' contemplates a proceeding in advance of the proceeding to probate the will to carry out and make practical the procedure in the Surrogate's Court, as it had long existed and as it is now regulated by express rule adopted in several of the counties of the state, requiring the production of the will sought to be probated.'' (*Matter of Hardy*, 216 N. Y. 132, 136.) Rule V of the Rules of Practice of the Surrogate's Court of Suffolk County provides that '' In all proceedings for the probate of a will, the original will, if in the possession of the petitioner or can be obtained by him, must be filed with the petition, and if the will is not so filed the petition must state the reason for failing to do so and the name and address of the person having such will .'' (Bender's Court Rules [1st ed.], p. 457.) The paper herein sought for filing cannot be obtained by petitioner unless the Surrogate exercises the authority granted him by section 137 of the Surrogate's Court Act. Since the will is concededly in the possession of the respondent, petitioner cannot probate her carbon copy, conformed except as to signatures, as a lost or destroyed will under section 143 of the Surrogate's Court Act. (Cf. *Matter of Bohnson*, N. Y. L. J., Dec. 14, 1951, p. 1656, col. 3, RUBENSTEIN, S.)

Section 137 of the Surrogate's Court Act provides that in a situation as is here presented '' the court *must* make an order requiring the respondent to attend and be examined in the premises, and *may* in such order or otherwise in the proceeding require the production of any will or testamentary instrument.'' (Emphasis mine.) The language of section 137 anent an order to require production of a will would seem to be merely permissive; however, diligent search has failed to bring to light a case in which such relief was not granted, where the statutory prerequisites thereto have been shown. On the contrary, it would seem to be the law that '' The petitioner has the *right* to have the * * * will filed for examination ''. (*Matter of Yung*, 216 App. Div. 595, 598–599; emphasis mine.) In *Farrell*

v. *Zibro* (268 App. Div. 39, 40) section 137 of the Surrogate's Court Act is the authority for the forthright proposition that "Wills may not be retained or suppressed." From all of the above, I believe one may infer that no one has the right to the possession of a will to the exclusion of one interested in offering the will for probate.

In *Georges* v. *Georges* (18 Ves. Jr. 294, 296, Chancery, 1811), the court stated: "The effect of it [upholding the theory of a lien on a will of a decedent] would go to a great extent. The executor having the right to retain his own debt (Note: against debts of equal degree), consider the use to which such a lien might be perverted by an attorney with a large debt, himself preparing the Will, and a subscribing witness, under this doctrine of lien keeping that Will, and setting himself above the executor. He cannot refuse the production for the purpose of establishing the character of all persons, claiming under the instrument." The rule of *Georges* v. *Georges* (*supra*) was restated in *Balch* v. *Symes* (Turn. & Russ. 87, 92, Chancery, 1823). In *Ex Parte Law* (2 A. & E. 45, Kings Bench, 1834), where the Prerogative Court had cited an attorney to produce the will of a deceased client, the Court of Kings Bench denied a writ of prohibition directed at the Prerogative Court, where the theory of the petition therefor was the retaining lien of the attorney.

The first American case on this subject was *Matter of Bracher* (60 N. J. Eq. 350, Prerog. Ct., 1899, affd. on other grounds *sub nom. Bracher* v. *Olds,* 60 N. J. Eq. 449, Ct. Err. & App., 1900). This case is generally cited for the lower court holding that an attorney may not withold a will albeit he claims a lien thereon. Actually, the case was disposed of on an agency theory, on appeal, and is not, therefore, authority for the proposition that the retaining lien of an attorney does not extend to his dead client's will. However, the rationale of the lower court's decision is of interest (p. 351): "Without any discussion in respect to the peculiar possession of the papers, upon which the lien is claimed, I will observe that it would be a curious condition of affairs if an attorney could practically defeat the probate of a will by its retention until a bill against a testator is paid, when there can be no one to pay the bill on behalf of the estate, until the will was proved, and there can be no one with whom the amount due can be litigated."

The question of an attorney retaining a will was one of first impression in this State when it was considered by Surrogate SAVERESE in *Matter of Reiss* (200 Misc. 697). In holding that

the attorney's retaining lien does not extend to the will of a deceased client, the court stated at page 699: " Respondent is asserting his lien, not against his client, who is dead, nor against petitioner, who does not seek possession thereof, but against the court. Petitioner is not liable to respondent for his fee; the estate is. The only way respondent may be compensated is by filing a claim with the legal representative of his client's estate when appointed. His conduct is blocking that very condition precedent to the satisfaction of his claim. Respondent's retaining lien must yield to the public policy of the State requiring the filing of wills of deceased persons.''

" One of the most fundamental conceptions of probate law is that it is the duty of the court to effectuate, in so far as may be compatible with the public interest, the devolutionary wishes of a deceased person. [Cases cited.] To that end, the court is, in effect, an additional party to every litigation affecting the disposal of the assets of the deceased. (*Matter of Van Valkenburgh,* 164 Misc. 295, 298.) '' (*Matter of Canfield,* 165 Misc. 66, 69–70, *supra.*) Thus, this court is bound to effectuate the policy requiring the production of the original will for probate. (See cases and statutes above cited.)

However, upon this reargument respondent prays that in the event he be ordered to produce the will, he nevertheless retain constructive possession of the paper pursuant to his lien; that the court fix the amount of such lien; and, that respondent be given a preference of such lien above all debts of the deceased other than funeral and administration expenses. This is a novel position to take and would result in entailing the testament even though handed over for filing and probate. " It is at least questionable if there is jurisdiction in this proceeding '' to fix the amount of a lien. (See *Matter of Hinkley,* 183 Misc. 168, 170), since, " As has frequently been noted (*Matter of Hardy,* 216 N. Y. 132, 137; *Matter of Gillender,* 98 Misc. 521, 523; *Matter of Jussila,* 104 id. 579, 580), and is wholly obvious to any person acquainted with Surrogate's Court practice, a proceeding to secure the production of a purported testamentary instrument is an independent special proceeding which has no relation to any other proceeding, the institution of which is authorized by the Surrogate's Court Act (*Matter of Yung,* 216 App. Div. 595, 598.) '' (*Matter of Kennedy,* 164 Misc. 796, 798, *supra.*)

The above applies with equal force to respondent's request for a preference for his claim, in support of which he has pointed to no statute or decision; moreover, since the lien which respond-

ent asserts is not a charging lien on a specific fund or judgment, but merely a retaining lien, it is difficult to understand how such claim would be entitled to a preference by any provision of section 212 of the Surrogate's Court Act.

In respect to respondent's request for " such other relief as to the court may seem just", it has been suggested that the court could preserve the lien of the attorney by appointing a temporary administrator of the assets of the decedent (Surrogate's Ct. Act, § 126, subd. 1; see 27 N. Y. U. L. Rev. 342, 344). If this position were sound, it would not necessarily follow that respondent's " conduct is blocking that very condition precedent to the satisfaction of his claim ". (*Matter of Reiss, supra,* p. 699; see, also, *Matter of Bracher, supra.*) However, thirty years ago, in *Matter of Jussila* (104 Misc. 579), Surrogate Fowler held that where the will is held by an attorney who fails or neglects to file it and another will is claimed to be in a safe deposit box, the proper relief is by a proceeding to compel production of the will, rather than by application for temporary administration.

Therefore, the conclusions of this court are as follows: Upon reargument of this motion I find no reason to disturb the decision directing respondent to produce the will for filing in this court. This court is without power in this proceeding to fix the amount of respondent's claim or grant a preference to such claim.

Enter order accordingly on notice.